**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

|                                                                              |   |                           |
| ---------------------------------------------------------------------------- | - | ------------------------- |
| **ALVIN MARSHALL WARNER,**                                                   | : |                           |
|                                                                              | : |                           |
| **Plaintiff,**                                                               | : |                           |
|                                                                              | : |                           |
| **v.**                                                                       | : | **Action No. 2:17cv36**   |
|                                                                              | : |                           |
| **NANCY A. BERRYHILL,**                                                       | : |                           |
| **Acting Commissioner,**                                                     | : |                           |
| **Social Security Administration,**                                          | : |                           |
|                                                                              | : |                           |
| **Defendant.**                                                               | : |                           |

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Plaintiff Alvin Marshall Warner's ("Plaintiff") complaint filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff filed a Motion for Summary Judgment and memorandum in support, ECF Nos. 10-11, and the Commissioner filed a cross-Motion for Summary Judgment and Memorandum in Support, ECF Nos. 12-13, which are now ready for recommended disposition. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned

**RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 10, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 12, be **GRANTED**, and the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

On May 27, 2015, Plaintiff initially filed his application for SSI, alleging disability due to sleep apnea, bilateral flat feet, tendonitis Achilles, tinnitus, gastroesophageal reflux disease ("GERD"), right and left foot hallux values, lumbosacral strain, lumbar radiculopathy of right lower extremity, and left hip osteoarthritis, with an onset date of November 15, 2012. R. 22, 291.[1] His application was initially denied on June 26, 2015, and again denied upon reconsideration on December 2, 2015. R. at 22. Plaintiff then requested a hearing in front of an administrative law judge, which was conducted on April 4, 2016. R. at 22. The Administrative Law Judge Tom Duann ("the ALJ"), issued a decision denying Plaintiff's SSI application on June 2, 2016. R. at 22-33. On July 14, 2016, Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision. R. at 18. On August 22, 2016 the Appeals Council denied Plaintiff's request for review because the ALJ's decision was supported by substantial evidence and Plaintiff's claims did not warrant review, making the ALJ's decision the Commissioner's final decision. R. at 10-12. On December 14, 2016, the Appeals Council extended the time for Plaintiff to seek judicial review of the Commissioner's final decision. R. at 1-2.

Having exhausted his administrative remedies, on January 17, 2017, Plaintiff filed the instant Complaint for judicial review of the Commissioner's decision. ECF No. 1.[2] The

---

[1] "R." refers to the certified administrative record that was filed under seal on April 10, 2017, ECF No. 7, pursuant to Local Civil Rules 5(B) and 7(C)(1).

[2] At the time this Complaint was filed, Carolyn W. Colvin was the Acting Commissioner of the Social Security Administration ("SSA"). Nancy A. Berryhill is now the current Acting Commissioner.

Commissioner filed an Answer on April 10, 2017. ECF No. 6. The matter was referred to the undersigned U.S. Magistrate Judge ("the undersigned") on April 12, 2017. ECF No. 8. Plaintiff filed his Motion for Summary Judgment and Memorandum in Support on May 15, 2017, ECF Nos. 10-11, and the Commissioner filed a Cross-Motion for Summary Judgment, a Memorandum in Support, and a Response in Opposition on June 14, 2017, ECF Nos. 12-14. The matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff alleged his disability onset date was November 15, 2012. R. at 22. Plaintiff was born on June 27, 1977 and was thirty-five years old on the alleged disability onset date, making him a "younger individual" under the SSA's regulations. *See* R. at 32. *See also* 20 C.F.R. § 416.963(c) (defining anyone under the age of 50 as a "younger person."). On April 4, 2016, Plaintiff appeared, represented by counsel Russell Fentress, and testified before the ALJ at the administrative hearing. R. at 22, 38-65. Linda Augins, an impartial vocational expert ("VE") also appeared and testified. R. at 22, 58-64. The record included the following factual background for the ALJ to review:

Plaintiff graduated from high school in 1996 and has completed some college. R. at 46. Plaintiff joined the United States Navy on August 14, 2001, served as a Gunner Mate, and remained on active duty until his medical retirement on October 28, 2015. R. at 1716.

Plaintiff testified that he lives in an apartment in Norfolk with his two children and his wife, who is a supervisor at the Naval Exchange. R. at 45, 48. Plaintiff is currently on one hundred percent disability from the VA. R. at 48. Plaintiff's medical history is significant for three bunion-related left foot surgeries in 2011, 2013, and 2014, R. at 187, 1156, 1251-53, one right ankle scope in 2003, R. at 187, a rhinoplasty at an unknown date, R. at 187, and at least two

3

hip surgeries in 2015 and 2016, as well as chronic lower back pain that has not required surgery, hospitalization, or emergent treatment, R. at 613, 621, 1705. Plaintiff's ankle issues began in 2003 when he sprained his ankle. Following a scope and debriding of the soft issue, Plaintiff was returned to normal duty. R. at 187. In 2005, Plaintiff began experiencing bunion problems, which were initially treated conservatively with orthotics, stretching exercises, a footwear accommodation, and finally requiring surgery, and then corrective surgery as previously noted. R. at 186-87. In spring of 2015, Plaintiff underwent physical therapy for his knee complaints, as well as for his complaints of chronic neck pain. R. at 435-43, 448, 453, 461-68.

Due to problems sitting, standing, and walking, Plaintiff was put on light duty in June 2013 and remained at this status until his medical retirement in October 2015. R. at 49-51. Plaintiff attributed these problems to pain in his feet and hips that required him to lay down or elevate his legs on a couch because his feet would swell from standing and his hips hurt when he sat in a normal chair. R. at 49-52. Since June 2013, Plaintiff has been unable to assist with housework such as cooking, chores, cleaning, and laundry, and his wife recently applied for caregiver status with the VA. R. at 55. Plaintiff testified that he began using the CPAP machine in 2012 to treat his sleep apnea and has used it consistently from that time to the present. R. at 56. Plaintiff indicated that although he still wakes up tired, he reported sleeping better, "not waking up gasping for air," and that his snoring was noticeably reduced. R. at 56. Additionally, the April 2, 2015 "Sleep Apnea Disability Benefits Questionnaire" indicated that Plaintiff's sleep apnea did not affect his ability to work. R. at 1765. Plaintiff is prescribed medication to treat his GERD. R. at 57.

On February 11, 2015, the Naval Medical Review Board issued a report which indicated that Plaintiff's "medical condition interferes with the reasonable performance of his assigned

4

duties," and referred Plaintiff to the Physical Evaluation Board for a fitness for duty determination. R. at 190. This February 11, 2015 report was supplemented by the April 3, 2015 addendum report of Dr. R. Randolph ("Dr. Randolph"), an orthopedic surgeon, who indicated that Plaintiff should be returned to full duty with activity modification, but that Plaintiff's claimed chronic hip and lower back pain "have not interrupted [Plaintiff's] Naval career and the above noted conditions do not constitute a disability at this time and are not likely to be a disability in the near future." R. at 178-79. A second addendum to the February 11, 2015 Report was filed in August 2015, wherein Dr. Austin C. Nabet and Dr. L. Balsamo opined that Plaintiff was unable to fulfill his military duties, but also suffered from "significant limitations in achieving his activities of daily living," and recommended surgical intervention to resolve some of the issues and/or improve Plaintiff's quality of life. R. at 180-84. On August 28, 2015, Dr. Angela M. Myers and Dr. Thomas Douglas submitted a third addendum to the February 11, 2015 Medical Board Report, which indicated that Plaintiff would continue to experience moderate pain during high-impact and moderate impact activities due to complications with his feet and ankles, and recommended that Plaintiff continue with physical therapy, possible surgical intervention, and be given a job that does not require him to be on his feet for long periods of time. R. at 256-58.

At the April 4, 2016 hearing, the VE was presented with a total of three hypotheticals by the ALJ. For the first hypothetical, the VE testified that for a hypothetical individual of Plaintiff's age, education, and work history, with limitations of light work, only frequent ramp and stair climbing, occasional ladder, rope, and scaffold climbing, frequent balancing, stooping, kneeling, crouching, and crawling, and occasional exposure to unprotected heights and hazards, such an individual could perform work as a counter clerk, cashier, or officer helper. R. at 59-60.

For the second hypothetical, the VE testified that, assuming the same hypothetical individual, but with the limitations of sedentary work, occasional ramp and stair climbing, no ladder, rope, or scaffold climbing, occasional balancing, stooping, kneeling, crouching, and crawling, and no exposure to unprotected heights and hazards, available jobs included that of an addressing clerk, a charge account clerk, or a document preparer. R. at 60. For the final hypothetical, the ALJ asked the VE whether, for either of the first two hypotheticals, if the same jobs would be available if the individual also needed to have more than three unscheduled absences in a month due to symptom flare-ups, to which the VE responded "[n]o, Your Honor." R. at 61. In response to questioning by Plaintiff's attorney, the VE testified that if an individual needed to lay down more than one hour a day, no jobs would be available. R. at 62-63.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at \*3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)

6

(noting that substantial gainful activity is "work activity performed for pay or profit.");
*Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of
proof to make a finding of whether a claimant is able to engage in substantial gainful activity).
"An affirmative answer to question one, or negative answers to questions two or four, result in a
determination of no disability.   Affirmative answers to questions three or five establish
disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at \*10 (E.D. Va. June 23,
2014) (citing 20 C.F.R. § 404.1520).

Under this sequential analysis, the ALJ made the following findings of fact and
conclusions of law: First, the ALJ found that although Plaintiff engaged in substantial gainful
activity from the alleged onset date of November 15, 2012 through October 28, 2015, "there
[was] a continuous 12-month period [following Plaintiff's October 28, 2015 medical retirement]
during which [Plaintiff] did not engage in substantial gainful activity." R. at 25.  Although
Plaintiff alleges that from November 2012 when he had his first foot surgery until his medical
retirement on October 28, 2015 he was only on a paid status due to an accommodation from the
Navy for his medical conditions, the ALJ rejected this characterization, based on Plaintiff's
Enlisted Evaluation Reports from February 2013 through October 2014. R. at 24 (citing 1716-22
("Exhibit 6F")).  Therefore, "[t]he remaining findings address[ed] the period(s) [Plaintiff] did not
engage in substantial gainful activity." R. at 25.  However, the ALJ noted that even if Plaintiff's
paid duty status between November 15, 2012 and October 28, 2015 did not qualify as SGA, the
ALJ's determination regarding the merits of Plaintiff's application would remain unchanged, and
the ALJ would still conclude that Plaintiff was not disabled. R. at 24-25, 33.

Second, the ALJ determined that Plaintiff suffered from the following severe
impairments: degenerative disc disease ("DDD") of the spine, degenerative joint disease ("DJD")

7

of the bilateral hips, DJD of the bilateral ankles, and pes planus deformity (flat feet) of the bilateral feet, and status post surgeries. R. at 25. The aforementioned impairments were found to be severe because they were established by objective medical evidence, and the impairments and their symptoms limited Plaintiff's ability to perform physical work activities. R. at 25.

To the extent that Plaintiff alleged other impairments, including: sleep apnea, tinnitus, mild GERD, anxiety, depression, history of alcohol abuse, allergic rhinitis, superficial scars, and mild right wrist carpal tunnel syndrome, the ALJ found such impairments to be non-severe because they either did not exists for a continuous period of twelve months, were responsive to medication, did not did require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations. R. at 25 (citing 20 C.F.R. § 404.1509; SSR 85-28). With respect to Plaintiff's medically determinable mental impairments of anxiety, depression, and history of alcohol abuse, the ALJ found that when considered singly and/or in combination, these did not cause Plaintiff more than a minimal limitation on his ability to perform basic mental work activities. R. at 25. Specifically, the ALJ found that none of the limitations identified in "paragraph B" were present because Plaintiff suffered only a mild limitation in activities of daily living, in social functioning, and in concentration, persistence, or pace. R. at 25-26. Additionally, Plaintiff had suffered no episodes of decompensation of an extended duration. R. at 26. The ALJ noted that in arriving at this conclusion, he remained mindful of the requirements enunciated by the Fourth Circuit in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), and found that because Plaintiff's mental impairments were not severe, *Mascio* was inapplicable to the instant case. R. at 26.

Third, the ALJ determined that evidence failed to show that Plaintiff had an impairment or combination of impairments that met or medically equaled one of the listed impairments set

forth in 20 C.F.R. Part 404, Subpart P Appendix 1.  R. at 26.  The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined by the SSA regulations, with the added limitations that Plaintiff only occasionally climb ramps and stairs, never climb ladders, rope, and scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, and have no exposure to unprotected heights and hazards.  R. at 27.  While the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged by Plaintiff, the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  R. at 28.  Although Plaintiff alleged a November 15, 2012 onset date of various physical impairments including lumbar disorder, left hip osteoarthritis, bilateral hallux algus deformities, left bunion removal surgery, GERD, flat feet deformities, Achilles tendonitis, tinnitus, and sleep apnea, he continued to work full time for the Navy.  R. at 27 (citing R. at 291 ("Exhibit 1E")) (Plaintiff stating "[y]es, I am currently working," in response to self-populated Disability Report Form).  The ALJ noted that the overall records consistently supported a finding that while Plaintiff could not return to his previous medium level of exertional activity, his ability to perform work at a sedentary level was unaffected.

Additionally, the ALJ found significant to his assessment of Plaintiff's credibility that Plaintiff testified at the hearing that he was previously prescribed a cane to assist with his ambulation, R. at 53, and actually appeared at the hearing on crutches, R. at 55, "[y]et clinic progress notes reflect the [Plaintiff] uses a brace, rather than a cane or other assistive device as alleged at the hearing."  R. at 30 (citing R. at 1826 ("Exhibit 7F/104")).  To the extent that Plaintiff was using the crutches or other assistive devices before and after his hip surgeries, the

9

ALJ found that the medical records indicated that Plaintiff was able to return to at least a sedentary exertional level after healing from the hip surgeries. R. at 31.

The ALJ gave only partial weight to the VA's determination that Plaintiff was one hundred percent (100%) disabled for two reasons. First, the records as a whole indicate that Plaintiff's foot and ankle problems prevented him from returning to the exertional demands of a Gunner's Mate, a conclusion with which the ALJ agreed, but did not indicate whether Plaintiff could be limited Plaintiff to sedentary work, notwithstanding surgical intervention on his hips in 2015 and 2016. R. at 31. Second, the ALJ found that the VA's disability determination of fifty percent (50%) due to sleep apnea was inconsistent with the VA's own assessment on the Disability Questionnaire, which indicated that Plaintiff had "mild" sleep apnea that improved with compliant use of CPAP and did not affect Plaintiff's ability to work. R. at 31 (citing R. at 1764-65).

The ALJ gave moderate evidentiary weight to the findings of State agency medical consultants who determined that Plaintiff was capable of a wide range of light work, finding that Plaintiff's subjective complaints and the medical records militated in favor of sedentary work instead. R. at 31. With respect to the psychological State agency consultants, the ALJ gave their opinions regarding Plaintiff's mental health impairments significant weight, "in light of [Plaintiff's] history of infrequent mental health treatment and the absence of findings of significant abnormalities during examination." R. at 31 (citing SSR 96-6p).

Fourth, the ALJ determined that in light of his RFC for limited sedentary work, Plaintiff was unable to perform past relevant work as a Gunner's Mate, which is classified as skilled medium work. R. at 32, 59.

Finally, the ALJ found that work existed in significant numbers in the national economy for Plaintiff based on his age, education, ability to speak English, work experience, and residual functional capacity, including positions as an addressing clerk, a charge account clerk, and a document preparer. R. at 32-33.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

A.    **The ALJ did not err by finding that Plaintiff engaged in SGA between November 15, 2012 and October 15, 2015.**

Plaintiff argues that although Plaintiff reported to work on light duty status and was paid for such work between his alleged onset date of November 15, 2012 and October 28, 2015, this work activity was done "under special conditions" which occurred during the end of his service as he was being processed for medical discharge, and represented an accommodation from the Navy that cannot be considered "competitive employment" under the SSA regulations. ECF No. 16-18 (citing  20 C.F.R. § 404.1573(c)).   Subsection (c) of 20 C.F.R. § 404.1573, provides, in pertinent part, that

> The work you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital. If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. Also, if you are forced to stop or reduce your work because of the removal of special conditions that were related to your impairment and essential to your work, we may find that your work does not show that you are able to do substantial gainful activity. However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level. Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which—
>> (1) You required and received special assistance from other employees in performing your work;
>> (2) You were allowed to work irregular hours or take frequent rest periods;
>> (3) You were provided with special equipment or were assigned work especially suited to your impairment;
>> (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
>> (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or

> (6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. § 404.1573(c). Plaintiff testified at the hearing that when he was first placed on light duty in June 2013, his duty station was changed to a place with couches where he could spent a significant amount of time laying on the couches in pain. R. at 51-52 (testifying "they put me in the building to where we were working with pregnant females, so I was able to go in the office where they were. And we had couches in there for people who had these medical problems, so I had to go in there and work with them. So I was pretty much in there . . ."). Accordingly, Plaintiff argues that his work status pending medical discharge

> "clearly qualifies as work performed under at least three of the circumstances described in [Subsection (c)] in that he was allowed to work irregular hours or take frequent rest periods; he was permitted to work at a lower standard of productivity or efficiency than other employees; and his employment was continued during the time he was being processed for discharge because of 'past association' with [the U.S. Navy]."

ECF No. 11 at 17. The Court disagrees and finds that substantial evidence supports the ALJ's conclusion that this argument is belied by Plaintiff's evaluations, which provide specific examples of his work and commend him for his performance in discharging his duties. *See e.g.*, R. at 1718 (recognizing Plaintiff "[a]ssisted in the training of qualifying of approximately two-thirds of NORMANDY's crew in Small Arms and Crew Serve Weapons . . . Instructor was critical to NORMANDY and his efforts have been proven [sic] invaluable"); R. at 1722 (noting Plaintiff "[m]anaged the maintenance efforts of 22 Sailors in the inspection, disassembly, repair and reassembly of the Close In Weapon Systems (CIWS). His leadership resulted in the division successfully completing nine CIWS overhauls and correction of nine CASREPS, saving the Navy $75k in outside repair cost"). As discussed by the ALJ in his decision and as the

13

Commissioner noted, Plaintiff's Enlisted Evaluation Reports for the period of February 2013 to October 2014 indicate Plaintiff consistently met his employer's expectations during those periods of time. *See* ECF No. 13 at 15 (citing R. at 24, 1717-22). Indeed, Plaintiff's evaluation for the period of October 26, 2013 through April 16, 2014 includes abundant praise of Plaintiff's work performance, and also a recommendation for not only retention, but ***early promotion*** to Chief Petty Officer. R. at 1719-20 (emphasis added). The ALJ further noted that Plaintiff "received $16,974.00 per quarter from Q4, 2014 through Q3, 2015, which is well in excess of the amount required for Substantial Gainful Activity under Social Security regulations." R. at 25 n.1 (citing R. at 266-67 ("Exhibit 8D")).

Additionally, as noted by the Commissioner, at the hearing the ALJ specifically inquired about the absence of Plaintiff's evaluations for 2013 through 2015, and Plaintiff's counsel represented that such records were in Plaintiff's possession and that Plaintiff would provide the ALJ with the same by no later than April 15, 2016. *See* ECF No. 13 at 16 (citing R. at 64) ("He should have one from every year from '13 through '15, so you know, I would like to see those three years' worth of Enlisted Evals [sic] and the DD 214. . . . And you have until April 15th for that. . . . And once I get those records, I should be able to issue a written Decision within a few weeks thereafter."). It is well-established that Plaintiff "bears the burden at step one of showing that he is not performing substantial gainful activity." *Motley v. Astrue*, No. 2:11-CV-00017, 2011 WL 6301181, at *5 (S.D.W. Va. Dec. 16, 2011) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).

Plaintiff concedes, as he must (albeit, tacitly), that he "failed to provide his Enlisted Evaluation for the period from November 1, 2014 through October 28, 2015." R. at 24-25. *See also* ECF No. 11 at 18 ("There is no basis in law for this ALJ to establish some evidentiary

14

presumption that the missing documents would somehow negate the evidence presented by this claimant."). Plaintiff correctly observes that it was not the failure to abide by the ALJ's instruction that is the fatal flaw to this allegation of error. *See* ECF No. 11 at 18 ("While an ALJ may even instruct a claimant to fetch the broomstick belonging to the Wicked Witch of the West, the failure to do so does not somehow negate existence of other persuasive evidence in the record."). Rather, and as noted by both the ALJ and the Commissioner, the fatal flaw stems from Plaintiff's failure to carry his burden at Step One of the ALJ's analysis to provide information demonstrating that his work during the subject period was not substantial gainful activity. *See* R. at 25 ("As the burden of proof is on the claimant to establish that his work during this period is not substantial gainful activity, [Plaintiff] failed to meet his burden by failing to provide the documentary proof as requested."); ECF No. 13 at 16. *See also Motley v. Astrue*, No. 2:11-CV-00017, 2011 WL 6301181, at *5 (S.D.W. Va. Dec. 16, 2011) ("Here, the ALJ determined, at step one of the sequential evaluation process, based on Claimant's testimony and his earnings for 2006 through 2008, that Claimant was not disabled because he was engaged in substantial gainful activity. Therefore, further evaluation was not required."). As a result, the ALJ's finding regarding Plaintiff's SGA during the subject period (November 15, 2012 through October 28, 2015) is supported by substantial evidence and establishes a conclusion of "not disabled." However, even assuming *arguendo* that Plaintiff did not engage in SGA, the ALJ performed the rest of the five step analysis and determined that Plaintiff had an RFC for sedentary work with limitations, a finding which is also supported by substantial evidence.

**B.    The ALJ properly assessed Plaintiff's subjective complaints of pain.**

Plaintiff seems to argue that because there was objective evidence of severe impairments, the ALJ was required to accept Plaintiff's representations as to the pain accompanying his

impairments. ECF No. 11 at 18 ("[Plaintiff] has presented an abundance of evidence establishing that he experiences a number of painful orthopedic conditions. The record is filled with medical records documenting the origin of these conditions, [Plaintiff's] attempt to obtain relief through any and all means offered to him . . ."). This is an incorrect statement of the law governing this Court's inquiry. To be sure, "while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989) (citing *Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir. 1986)). However, the documentation of pain complaints and objective evidence indicating that the impairments would give rise to pain symptoms deals with only the first step of the ALJ's two-step process in evaluating a claimant's credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). *See also* Social Security Ruling ("SSR") 96–7p; 20 C.F.R. § 404.1529). The second step is concerned with assessing the intensity and persistence of a claimant's symptoms, as derived from the medical records, testimony of the claimant, and the record as a whole, and the effect of symptoms on an ability to perform work-related activities. *Chater,* 76 F.3d at 595.

As the Commissioner notes, the ALJ is charged with "assess[ing] the credibility and to discern which account more closely mirror[s] reality." *See* ECF No. 13 at 20 (quoting *Turner v. Barnhart*, 2005 WL 1346831, at *2 (W.D. VA. June 3, 2005)). The Court finds that substantial evidence exists to support the ALJ's determination that Plaintiff's testimony was not entirely credible. *See Hamilton v. Colvin*, No. 3:15CV716 (REP), 2016 WL 4987329, at *4 (E.D. Va. Aug. 25, 2016), *report and recommendation adopted*, No. 3:15CV716, 2016 WL 4940329 (E.D. Va. Sept. 14, 2016). Specifically, the ALJ found that Plaintiff's Enlisted Evaluations from February 2013 through October 2014 reflect that he adequately performed his duties, taken

16

together with the "significant amount of time Plaintiff spent doing volunteer work, is inconsistent with his complaints of disabling pain since November 2012." R. at 30 (citing R. at 1717-22 ("Exhibit 6F")). *See also* ECF No. 13 at 19 (citing R. at 1722) (indicating that in 2014, Plaintiff "devoted 140 off-duty hours to a teen outreach program, and coached and mentored a boys' basketball team"). Additionally, the ALJ made specific mention of Plaintiff's use of a walking device at several points in his decision and Plaintiff was directly asked about it at the hearing, and then used such references as a basis for his assessment of Plaintiff's credibility. R. at 27 ("[Plaintiff] testified that he has been using a cane since 2013; however, this testimony is inconsistent with the medical records."); R. at 28 (noting the need to walk with a cane, and requiring the use of crutches on and off); R. at 30 ("[C]linic progress notes reflect that [Plaintiff] uses a brace, rather than a cane or other assistive device as he alleged at the hearing."); R. at 31 ("While [Plaintiff] alleged that he has been using a cane since 2013 and has been unable to sit and stand since then, this testimony is not supported by the medical records . . ."); R. at 32 ("While I agree that [Plaintiff] does have walking and standing issues necessitating a reduction of residual functional capacity to the sedentary level, there is no need for use of cane based on the updated medical evidence.") R. at 55 ("ALJ: Okay. You came in with crutches today. How long have you been using the crutches? Plaintiff: Off and on, I think it was like 2012 from the first foot surgery, but consistently since December when I had the first surgery, December 16th."). *See also Hamilton v. Colvin*, No. 3:15CV716 (REP), 2016 WL 4987329, at *7 (E.D. Va. Aug. 25, 2016), *report and recommendation adopted*, No. 3:15CV716, 2016 WL 4940329 (E.D. Va. Sept. 14, 2016) ("The ALJ considers "medically required" assistive walking devices when making his RFC assessment.") (citing *Fletcher v. Colvin*, 2015 WL 4506699, at *8 (M.D.N.C. July 23, 2015) (quoting SSR 96–9p)).

17

To the extent that Plaintiff argues that the ALJ "erred in evaluating his subjective complaints because he did not consider all seven factors set forth in 20 C.F.R. § 404.1529(c)(3) [this argument] also lacks merit." *Joseph v. Astrue,* No. 5:11CV00022, 2011 WL 4710821, at *4 (W.D. Va. Oct. 4, 2011), report and recommendation adopted, No. 5:11CV00022, 2011 WL 5196547 (W.D. Va. Oct. 31, 2011). *See* ECF No. 11 at 20 ("the regulation provides an unambiguous structure for the analysis of pain issues when determining the credibility of the allegations. One expects the ALJ analysis to follow at least generally this structure, and contain a discussion of these seven relevant factors.") (citing 20 C.F.R. § 404.1529(c)(3)) (providing such factors as: "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."). While Plaintiff may "expect" an ALJ to follow this structured analysis, Plaintiff can point to no case law requiring an ALJ's decision to conform exactly to a boilerplate analysis process as Plaintiff suggests. *See Joseph v. Astrue,* No. 5:11CV00022, 2011 WL 4710821, at *4 (W.D. Va. Oct. 4, 2011), *report and recommendation adopted*, No. 5:11CV00022, 2011 WL 5196547 (W.D. Va. Oct. 31, 2011) (rejecting this specific argument and observing that "[n]either the [SSA] nor the Commissioner's regulations require more"). Rather, a review of the ALJ's decision, the medical records upon which the ALJ's decision was based, and the hearing testimony, reveals that the ALJ did consider the prescribed factors, albeit

18

not in an order that exactly tracked such factors as they are delineated in 20 C.F.R. § 404.1529(c)(3). *See e.g.*, R. at 28 (considering daily activities; measures used to relieve pain; aggravating or precipitating factors); R. at 30 (daily activities); R. at 45-46 (daily activities); R. at 51 (daily activities); R. at 49-55 (location, duration, frequency, and intensity of pain; precipitating and aggravating factors); R. at 57 (discussing type of medication, prescription efficacy and side effects). Plaintiff even references some of the specific testimony offered by Plaintiff during the April 4, 2016 hearing, noting that Plaintiff was invited to describe when the medical issues started, stating that Plaintiff testified that he had to elevate his legs during the day because of swelling and recounting Plaintiff's description of limitations with sitting because of his hips. ECF No. 11 at 11 (citing R. at 49-52). Plaintiff's argument essentially urges the Court to reweigh the evidence and arrive at a different conclusion from that of the ALJ. This is impermissible, and the Court declines to accept Plaintiff's invitation to expand its review beyond its clearly delineated scope. *See Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ].") (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996))

**C.    The ALJ did not err by relying on an improper hypothetical.**

Plaintiff argues that the ALJ relied on vocational testimony in reaching his decision that failed to fairly account for all of Plaintiff's limitations due to his impairments. ECF No. 11 at 22. Specifically, Plaintiff contends that because the ALJ's hypothetical questioning of the VE neglected to include Plaintiff's critical limitations related to pain, the ALJ's later reliance on the VE's testimony is unwarranted and constitutes reversible error. *See* ECF No. 11 at 22.

The Court disagrees. The Court has already determined that the ALJ properly made a credibility determination that did not credit Plaintiff's subjective complaints regarding his symptoms. *See* Part V.B, *supra*. Accordingly, the ALJ was entitled to rely on a hypothetical that did not include limitations based on those subjective complaints. "Helpful" and "relevant" vocational testimony is obtained "[o]nly when the hypothetical posed represents all of the claimant's substantiated impairments." *Hamilton v. Colvin*, No. 3:15CV716 (REP), 2016 WL 4987329, at *8 (E.D. Va. Aug. 25, 2016), *report and recommendation adopted*, No. 3:15CV716, 2016 WL 4940329 (E.D. Va. Sept. 14, 2016) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). Here, the hypothetical question (and specifically, the second hypothetical, *see* R. at 60), "posed to the VE mirrored the RFC. Having concluded that substantial evidence supports the ALJ's RFC determination, the hypothetical questions posed to the VE adequately reflected Plaintiff's limitations and the ALJ properly relied on the VE's testimony." *Hamilton v. Colvin*, No. 3:15CV716 (REP), 2016 WL 4987329, at *9 (E.D. Va. Aug. 25, 2016), *report and recommendation adopted*, No. 3:15CV716, 2016 WL 4940329 (E.D. Va. Sept. 14, 2016) (citing *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (finding that substantial evidence supported the ALJ's decision when the hypotheticals included all limitations that the record as a whole supported)). Consequently, substantial evidence supports the limitations included and omitted by the ALJ in his hypothetical questions to the VE.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 10, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 12, be **GRANTED**, and the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
January 24, 2018